Rodríguez, Demandante y Apelante, *v.* Porto Rico Railway, Light and Power Company, Demandada y Apelada.

Apelación procedente de la Corte de Distrito de San Juan, Sección Primera, en pleito sobre daños y perjuicios.

No. 2477.—Resuelto en julio 28, 1923.

Daños y Perjuicios por Negligencia—Negligencia Contributoria—*Last Clear Chance*—Prueba.—En el presente caso de indemnización por negligencia imputada a una compañía de carros eléctricos, la evidencia demostró que el demandante se encontraba *ñangotado* sacando agua que se había acumulado durante su ausencia a mediodía. El estaba a unos dos pies de la vía del tren con su espalda hacia San Juan, de cuya dirección venía el carro. Había estado trabajando por varias horas al parecer en esta posición encorvada con una pierna un poco más arriba que la otra. Se había retirado sin dificultad alguna, según su propia declaración, de su posición, varias veces· para evitar los anteriores carros que habían pasado. El motorista lo vió así y en la posición de peligro en que estaba a unos cuatro o cinco metros, pero entonces no pudo parar a tiempo y el demandante fué lesionado por el carro. No consta que el motorista tuvo oportunidad de verle antes. Hubo· prueba tendente a probar que había una pequeña curva y una calle frecuentada antes de llegar al sitio de peligro en donde también existía· un,

montón de tierra al borde del hoyo donde trabajaba el demandante. *Se resolvió:* que la negligencia contributoria del demandante es evidente y no existe razón alguna para la aplicación de la doctrina de la ''última oportunidad posible'' (*last clear chance*), doctrina que no parece se levantó en la corte inferior.

APELACIÓN—TRANSCRIPCIÓN DE LA EVIDENCIA—LEYES NÚMEROS 27 DE 1917 Y 81 DE 1919; CONSTITUCIONALIDAD DE LAS MISMAS.—En el presente caso el Tribunal Supremo ratificó la doctrina establecida en el caso de *Rodríguez* v. *Porto Rico Railway, Light & Power Company*, 30 D. P. R. 931, en tanto en cuanto sostiene la constitucionalidad de las leyes números 27 de 1917 y 81 de 1919, relativas a la transcripción de la evidencia en el procedimiento de apelación.

Los hechos están expresados en la opinión.

Abogados del apelante: *Sres. Texidor* y *de la Haba.*.

Abogados de la apelada: *Sres. J. H. Brown, P. Amado Rivera* y *M. Acosta Velarde.*

EL JUEZ ASOCIADO SR. WOLF, emitió la opinión del tribunal.

El día 15 de octubre de 1918 el demandante, un empleado del municipio de San Juan, se hallaba componiendo un tubo del acueducto y estaba ocupado en este trabajo en la carretera principal o calle de San Juan entre las paradas 15 y 16. En la misma carretera la compañía demandada funciona un sistema de carros eléctricos. El demandante sufrió un accidente que él lo atribuyó a la negligencia de la demandada. Esta última negó su negligencia y alegó también la negligencia contributoria del demandante. La corte inferior en su opinión declaró probado que la demandada fué negligente, pero dictó sentencia a favor de dicha demandada, fundándose en la negligencia contributoria. En el curso de su opinión la corte se expresó en estos términos:

''Celebrado el juicio y practicada la prueba, la corte estima que se ha probado debidamente que la demandada ha sido negligente; que el demandante en el desempeño de su cargo el día antes citado, y en el lugar relatado se hallaba trabajando en la composición de un tubo del acueducto como a dos pies de la vía del trolley; que durante el trabajo realizado por el demandante en las horas de la mañana de ese día, comprendiendo que estaba en peligro, puso un

peón para que le avisara cuando se aproximaba un carro de la Compañía y que por la tarde no utilizó los servicios del peón y se limitaba a retirarse cuando sentía los carros; que éstos acostumbraban a avisarle tocando la campana y que no oyó al carro, sino que sintió un fuerte golpe que le hizo perder el conocimiento.

"La corte cree que la Compañía demandada fué negligente por estimar probado que el carro corría a gran velocidad; que el motorista no tocó la campana y que al declarar que no vió al demandante prueba su poco cuidado en el cumplimiento de sus deberes; pero también estima que ha existido la negligencia contribuyente por parte del demandante, quien sabiendo que estaba trabajando en un sitio de peligro dejó de tomar las precauciones que tomara en las horas de la mañana y confió por la tarde en las precauciones que creía debía tomar el motorista, sin que aparezca fundamento alguno que aconsejare al demandante a renunciar a las precauciones que tomó en las horas de la mañana."

El apelante ataca esta conclusión citada y alega o pretende alegar que no había ningún guardia o vigilante. Que había tal vigilante o guardia en la mañana del día en que ocurrió el accidente es indiscutible, aunque la corte puede haber estado algo equivocada en el resumen que hizo de la prueba. Hubo prueba tendente a acreditar que el otro hombre de referencia era a la vez un trabajador en la misma obra bajo las órdenes del demandante el cual cuando estaba cerca daba un aviso pero quien no estaba siempre próximo.

Convenimos con el apelante en que no existe ninguna aplicación de la doctrina de coempleado ni que ninguna responsabilidad recaía debido a la falta del otro empleado en avisar al demandante, pero no podemos convenir en que ninguna de estas consideraciones relevaba al demandante de ejercitar el debido cuidado. Era el deber de dicho demandante observar los carros que se aproximaban y protegerse él mismo. La opinión de la corte es enteramente susceptible de poder ser interpretada en el sentido de que el demandante no tomó precauciones para protegerse. El apelante admite en su alegato que estaba trabajando en un hoyo

próximo al trolley, pero sostiene que confió en la costumbre de la compañía de notificarle.

Estamos conformes con el apelante, como declaró probado la corte inferior, que la demandada fué culpable de negligencia al no tocar su campana así como al correr tan rápidamente, pero sostenemos que el demandante no tenía ningún derecho a confiar en la alegada costumbre o práctica de la compañía. Debió todavía ejercitar debido cuidado.

El apelante cita de la Obra de Thompson sobre Negligencia, página 203, lo siguiente:

"El debido cumplimiento de su empleo absorbe necesariamente su cuidado y atención. No pueden ellos estar fijos en su trabajo y al mismo tiempo mirar la calle arriba y abajo para ver los carros o vehículos que se aproximan. Su situación es pasiva. Ellos no están conduciendo ningún instrumento de peligro. Resulta, pues, tanto por consideraciones morales como legales que si mientras están de tal modo ocupados completamente en su trabajo dejan de ver ya por inadvertencia o negligencia un carro que se aproxima a tiempo para poder quitarse del camino y no chocar con él, esto no eximirá a la compañía de trenes si el carro se lanza sobre ellos bajo tales circunstancias que el motorista o conductor, mediante el ejercicio ordinario de cuidado razonable, los han visto en su trabajo en su condición de peligro y podrían por el ejercicio de un cuidado semejante haberles avisado a tiempo, o parado su carro en tiempo para evitar arrollarlos."

Por otra parte la apelada cita autoridades al efecto de demostrar que el deber de referencia por parte de la demandada no releva al demandante de todo deber o cuidado. La siguiente cita del tomo 25 de Ruling Case Law, pág. 1287, tiene relación con la cuestión.

"Está, sin embargo, bien establecido que el hecho de que una persona que ha recibido una lesión por un carro eléctrico es un trabajador dedicado a su ocupación no le exime del resultado de su misma negligencia. El debe ejercitar un grado razonable de cuidado para su propia seguridad y no debe confiar enteramente en aquellos que están a cargo del carro de que le den aviso de su aproximación, y si su misma negligencia contribuye a su perjuicio no

puede ser indemnizado por tal motivo. Las cortes generalmente exigen a una persona que trabaja en las calles en o cerca de una vía de carro eléctrico, regular su conducta por su conocimiento del hecho de que los carros están frecuentemente pasando y que por los daños causados por su omisión en tener en cuenta ese hecho y actuar de acuerdo con él, se le imputará negligencia contributoria. Así, pues, cuando uno que trabaja en una trinchera debajo de la vía de un tren eléctrico sabiendo que los carros pasan frecuentemente por esa vía, coloca su mano en un riel mientras pasa uno de los carros, se resolvió como cuestión legal que era culpable de negligencia y que no podía ser indemnizado por sus daños. Así se ha resuelto también que un reparador de cruces que sabía que los carros pasaban a intervalos frecuentes por el sitio en el cual él estaba trabajando, era culpable de negligencia al colocar una tabla tan cerca de la vía que fué cogido por un carro que pasaba causándole una lesión. Y un trabajador que limpiaba una calle y se encontraba en una posición de peligro en una vía estando con la espalda vuelta a la dirección de donde uniformemente se acercaban los carros y quien conocía bien los movimientos de los carros por la calle, se ha resuelto que es culpable de una negligencia tal que impide poder recobrar por su muerte. Cuando un trabajador que está familiarizado con la costumbre frecuente de pasar los carros por el punto en el cual él está trabajando, se para en el eje de la rueda de un vagón en una posición tal que sabe que no puede pasar un carro sin chocar con él, es culpable de negligencia como cuestión legal que impide el poder recobrar por los daños. El hecho de que un hombre que trabajaba en una calle por algunas semanas observaba siempre que se le ocurría mirar que los carros que pasaban tocaban sus campanas cuando había hombres cerca de la vía no demuestra una costumbre existente en hacerlo así o le exime de su falta de usar sus propios sentidos para su protección cuando de otro modo él no tenía derecho a esperar el aviso.''

Esta conclusión general está sostenida por los siguientes casos: *Brockschmidt* v. *St. Louis & Meramec River R. Co.*, 12 L. R. A. (N. S.) 345 *Kelly* v. *Boston Elevated R. Co.* 15 L. R. A. (N. S.) 282; *Young* v. *Citizens St. Ry. Co.*, 47 N. E. 142; *Hafner* v. *St. Paul City R. Co.*, 75 N. W. 1048; *Eddy* v. *Cedar Rapids & M. C. Ry. Co.*, 67 N. W. 676

Para dar aplicación a estas autoridades los siguientes

hechos que no han sido resumidos por ninguna de las par-
tes en el caso fueron demostrados por la prueba. El de-
mandante que se encontraba "ñangotado" estaba sacando
agua que se había acumulado durante su ausencia a me-
dio día. El estaba a unos dos pies de la vía del tren con su
espalda hacia San Juan, de cuya dirección venía el carro.
Había estado trabajando por varias horas al parecer en
esta posición encorvada con una pierna un poco más arriba
que la otra. Se había retirado sin dificultad alguna, según
su propia declaración, de su posición varias veces para evi-
tar los anteriores carros que habían pasado. El motorista
manifestó que él lo vió 'así y en la posición de peligro en
que estaba a unos cuatro o cinco metros pero entonces no
pudo parar su carro a tiempo. No consta que el motorista
tuvo oportunidad de verle antes. Hubo prueba tendente a
probar que había una pequeña curva y una calle frecuen-
tada antes de llegar al sitio de peligro en donde también
existía un montón de tierra al borde del hoyo donde traba-
jaba el demandante. La negligencia contributoria del de-
mandante es evidente y no existe razón alguna para la apli-
cación de la doctrina de la "última oportunidad posible"
(*last clear chance*), doctrina que no parece se levantó en la
corte inferior. El demandante dejó de probar que la de-
mandada pudo haber evitado el accidente mediante el ejer-
cicio del debido cuidado. El demandante no tuvo cuidado
de la aproximación del carro, y, ocupado enteramente en
sacar el agua acumulada, puede haberse inclinado sobre un
riel demasiado, pero él no estaba en el riel y dentro de la
previa experiencia del motorista no había nada al acercarse
a este lugar que le hiciera pensar en que la posición de peli-
gro del demandante continuaría; por lo menos dicho moto-
rista no tuvo tal idea hasta encontrarse a cuatro o cinco
metros del lugar del accidente, cuando era ya demasiado
tarde para parar el carro.

El apelante también se queja de haber sido condenado

en costas, pero no hay ninguna razón especial para alterar la discreción que tiene la corte en este particular.

Este fué un caso en el cual la apelada insistía en que no podía este tribunal considerar la transcripción de las notas taquigráficas debido a que la Ley No. 27 de 1917 y la No. 81 de 1919 eran anticonstitucionales y nulas por varias razones. Estas cuestiones han sido materia de estudio por esta corte en una opinión anterior, *Rodríguez* v. *Porto Rico R. L. & P. Co.*, 30 D. P. R. 931 y en tanto nuestra opinión anterior sostiene la constitucionalidad de las leyes, se vuelve a ratificar. En esa opinión expresamos ciertas dudas en cuanto a la constitucionalidad de la Ley 81 porque contenía más de una materia y enmiendas a preceptos existentes del Código sin incorporar toda la materia enmendada. Aunque la corte no ha dejado de tener dudas sobre la suficiencia de la Ley No. 81, creemos que toda la ley puede ser sostenida, pues todas las alegadas prescripciones en oposición son en beneficio del nuevo sistema de transcribir la evidencia iniciada primeramente por la Ley No. 27. De todos modos la duda favorecería la confirmación del caso, a cuya conclusión hemos llegado.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Asociados Aldrey y Franco Soto.

Los Jueces Sres. Presidente del Toro y Asociado Hutchison disintieron.